UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WARREN BARR | No. 14 CR 287-1<br><br>Judge Charles R. Norgle |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO RECUSE AND DISQUALIFY**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby presents its response to defendant Warren Barr's motion to recuse and disqualify. For the reasons set forth below, the motion should be denied.

**I.      Background**

On May 15, 2014, a grand jury in this district indicted Warren Barr III (along with five co-defendants) on 13 counts of bank fraud and making false statements, in connection with a real estate development at 1255 S. State Street in Chicago, Illinois. Dkt. 1. The Court issued a bench warrant as to Barr, who at that time was in the Kingdom of Saudi Arabia. Dkt. 36. That warrant ultimately was executed in February 2015, when Barr finally was returned to the United States through a formal diplomatic process and arrested by federal agents. Dkt. 74. Barr initially was represented in this case by attorney Michael King, until the Court appointed attorney Patrick Boyle on July 7, 2015. Dkt. 13, 99.

On June 17, 2016, at a hearing before this Court and pursuant to a written plea agreement, Barr pled guilty to Count 10 of the indictment, which charged him with making

1

a false statement to a financial institution, in violation of 18 U.S.C. § 1014. Dkt. 151-52. After Barr pled guilty, the Court set Barr's sentencing for October 12, 2016. Dkt. 163. Subsequently, at the request of Barr's counsel and over the course of approximately two years, the Court granted ten continuances of that date, ultimately in August 2018, setting a sentencing date of December 5, 2018. Dkt. 163, 170, 176, 184, 201, 215, 222, 237, 247, 267.

A noteworthy factor in this delay was Barr's request for access to certain materials related to his post-indictment detention in Saudi Arabia and subsequent transfer to the United States, which he claimed were relevant to his arguments regarding his potential sentence. *See* Dkt. 186. Although the government did not and does not consider any of the documents relating to Barr's time or detention in Saudi Arabia relevant to the determination of his sentence in this case, in order to allow him to present those documents to the Court, if he so desired, and allow the Court to review those documents, if it deemed it appropriate, the government began a time- and resource-consuming process of attempting to provide Barr's counsel with access to those documents.

Because three documents to which Barr sought access were classified, the Court appointed a classified security officer to this case in April 2017. Dkt. 193. Barr's then-counsel, Boyle, went through the considerable procedure required for him to achieve the proper clearance to review these documents—a process which also consumed significant government resources. That process resulted in Boyle not only being allowed to review the documents in question, but also to view them with Barr, which occurred at least by the spring of 2018.

By August 2018, when Boyle sought an adjournment of the sentencing to December 5, 2018, his email cover to the proposed order referred to it as the "hopefully final continuance of this sentencing," a perspective that the government shared. However, on November 15, 2018, shortly before that anticipated final sentencing date, and two and half years after Barr entered his guilty plea, attorney Michael Leonard moved on behalf of Barr to substitute himself as counsel to replace Boyle and to adjourn the sentencing date. Dkt. 286. He noticed the motion for two weeks later, November 30, 2018: three business days before the sentencing. Dkt. 287. At the motion hearing, Leonard asked the Court for a 90-day continuance of the sentencing date. Nov. 30, 2018 Tr. at 3, 5. In particular, and among other arguments, Leonard argued that he did not have the necessary clearance to view the classified documents that Boyle had been able to view, and that he needed time to acquire that clearance (assuming that it would be possible to do so). *Id.* at 3-7.

The Court granted the motion to substitute Leonard as Barr's counsel but declined to continue the sentencing for 90 days, stating that the "matter has been continued numerous times for sentencing. Mr. Barr has been represented by competent counsel all along the way. So in terms of sentencing, following the plea of guilty, yet another motion to continue is untenable." With respect to Leonard's arguments regarding his inability to view the classified materials, the Court stated that, "[i]f you don't have clearance, that's unfortunate. But after almost four years, the time has come for Mr. Barr to be sentenced," noting that "your client decided to hire somebody who doesn't have a security clearance." Nov. 30, 2018 Tr. at 4, 7. Still, the Court granted a nearly five-week continuance of the sentencing date, resetting it for January 8, 2019. Dkt. 290.

Rather than taking the required steps to prepare the Court for the sentencing hearing, such as providing the Court with his position paper on sentencing two weeks in advance of the hearing, LCrR 32.1(g), Barr moved on January 2, 2019, to dismiss the indictment, withdraw the guilty plea, and to continue the sentencing date. Dkt. 298, 300, 302. The next day, the government filed responses to the motions to dismiss the indictment and withdraw Barr's guilty plea. Dkt. 304-05.

The Court held a motion hearing the morning of January 4, at which the Court provided Barr until January 7 to file replies to the government's responses. Dkt. 307. Barr timely filed those replies and then also filed his sentencing memorandum. Dkt. 309-11. The Court denied all three of Barr's new motions in orders entered on January 7. Dkt. 312-13. The sentencing commenced on January 8, as scheduled. At the hearing, the government offered to allow the Court to review the classified documents that Barr and his prior counsel reviewed. Barr objected to that review. The Court adjourned the hearing after Leonard informed the Court of his plan to file a motion to have the Court recused from this case. That motion was filed the next day, January 9, 2019. Dkt. 316.

## II.   Legal Standards

Barr contends three statutory provisions warrant recusal: 28 U.S.C. § 455(a), § 455(b)(1) and § 144.

28 U.S.C. § 455(a) requires recusal when a judge's "impartiality might reasonably be questioned." This provision is designed to "promote public confidence in the integrity of the judicial process" and "does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably

believe that he or she knew." *United States v. Herrera-Valdez*, 826 F.3d 912, 917 (7th Cir. 2016) (*quoting Durhan v. Neopolitan*, 875 F.2d 91, 97 (7th Cir. 1989)). "The test for appearance of partiality is whether an objective, disinterested observer fully informed of the reasons that recusal was sought would entertain a significant doubt that justice would be done in the case." *Id.*

28 U.S.C. § 455(b) contains other circumstances where a judge should disqualify himself. Subsection (b)(1) warrants recusal when a judge has "a personal bias or prejudice concerning a party . . . ."

28 U.S.C. § 144 states as follows:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

When an affidavit is filed pursuant to § 144, the court which a party seeks to disqualify "must assume the truth of its factual assertions, even if it knows them to be false." *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993) (internal citation omitted). To be sufficient, "the facts averred must be sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient." *Id.*

5

To make a showing requiring recusal under § 455(b)(1) or § 144, a defendant must show that any bias or prejudice "is personal rather than judicial, and [] stems from an extrajudicial source—some source other than what the judge has learned through participation in the case." *Id.* (internal citation omitted). This showing of personal bias requires "personal animus or malice on the part of the judge." *Tezak v. United States*, 256 F.3d 702, 718 (7th Cir. 2001). As the Seventh Circuit stated in *Tezak*:

> The general presumption is that judges rise above any potential biasing influences. *See Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Comments made by the judge "during the course of trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 550-51, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice."). A judge's expressions of "impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges," are not sufficient to demonstrate bias or prejudice. *Id.* at 555-56, 114 S.Ct. 1147.

*Tezak*, 256 F.3d at 718.

### III.   Analysis

Barr claims this Court should be recused for two reasons. First, he submits that there is an appearance of partiality and actual bias because defense counsel represented a client in an appeal where the Seventh Circuit reversed the sentence imposed by this Court and ordered that a different judge be assigned the resentencing on remand. *See United States v. Moshin*, 904 F.3d 580 (7th Cir. 2018). Second, Barr asserts that recusal is required because this Court's interactions with him at a status hearing and at sentencing show that this Court is biased against his counsel. Neither of these grounds warrant recusal.

Nothing stemming from defense counsel's work on the *Moshin* case creates an appearance of partiality or personal bias. Lawyers frequently appeal rulings from district courts, and often succeed. In many such cases, the Court of Appeals directs reassignment of the case on remand.[1] That fact does not create an appearance of partiality for the district court judge in future cases with the attorney. Indeed, if a reasonable person could conclude that a district court's impartiality might be questioned because a defense lawyer sought the reversal of a decision and sought to have the case reassigned on remand, every lawyer having argued an appeal of a district judge's decision might make such a recusal motion in future cases before that same judge, arguing that there would be an appearance of partiality.

The fact that defense counsel might have been critical of the Court in *Mohsin* does not support recusal. "If any negative comment [about a judge] required the judge to recuse himself, that would be equivalent to giving a litigant a peremptory challenge against the judge. . . . [Section] 455(a) does not grant litigants such a privilege." *Matter of Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 839 F.2d 1226, 1231 (7th Cir. 1988) (denying writ of mandamus to disqualify district court judge); *Denardo v. Municipality of Anchorage*, 974 F.2d 1200, 1201 (9th Cir. 1992) (affirming district court's denial of recusal motion; stating that lawyer's letter to the Senate Judiciary Committee opposing Judge's nomination to the bench only was "probative of [lawyer]'s dislike for [the Judge,] not the other way around"); *King v. United States*, 576 F.2d 432, 437 (2d Cir. 1978) (holding no basis for

---

[1] In fact, under Seventh Circuit Rule 36, all cases remanded after trial are reassigned unless the court specifies otherwise.

disqualification of district court judge based upon trial counsel sending court a letter from the defendant that "cast aspersions upon the motivations and intent" of the court, because "letter may very well establish [defendant's] feelings toward Judge . . ., but has no tendency to show the latter's feelings" towards the defendant).

Barr's second argument for recusal, namely, that his interactions with the Court show personal bias, fare no better and also do not support recusal. First, as an initial matter, defense counsel has not and cannot show that his involvement in the *Moshin* matter establishes bias against him. To the extent the Court has expressed frustration with Barr or his counsel, that frustration appears to be based on Barr's efforts to continue to delay his sentencing unduly. The Court's responses to defense arguments in this case are based on those arguments and not some extrajudicial source. As a result, such interactions do not demonstrate personal bias warranting recusal. *See Sykes*, 7 F.3d at 1339.

Second, as noted above, comments made by judges that are disapproving or even hostile do not ordinarily warrant recusal, nor do a judge's expressions of impatience, dissatisfaction, or even anger. *Tezak*, 256 F.3d at 718. The Court's statements Barr cites do not demonstrate personal bias against defense counsel but instead Barr's repeated attempts to delay the sentencing hearing, including filing substantive motions just days before the sentencing, not answering the Court's questions, and rehashing issues that the Court has already decided.

For example, defense counsel claims that this Court was openly hostile to him at a November 30 status hearing. However, the Court allowed defense counsel to address issues related to the case at the hearing. The transcript shows that defense counsel asked for an

opportunity to make a record and this Court allowed him to do so, despite rejecting his argument. Nov. 30, 2018 Tr. at 3-6.

The same goes for the sentencing hearing. Throughout the hearing, the Court implored defense counsel to clearly state objections and to not obfuscate his position. It did not work. Again, for example, early in the sentencing this Court asked defense counsel to clearly state his objection to this Court's review of the classified materials *ex parte*. Defense counsel did not do so, instead repeatedly bringing up his motion to continue the sentencing that had already been denied. Jan. 8, 2018 Tr. at 3-7. At another point of the sentencing, defense counsel failed to directly answer questions about his client's financial condition despite the Court's requests. *Id.* at 83-89. None of these exchanges support recusal.

Defense counsel's own affidavit likewise does not support recusal. In the affidavit, defense counsel states that his request to replace the Court in the event of a remand in the *Moshin* case stemmed in large part on the Court's "treatment of, and conduct towards, Mrs. Mohsin's defense counsel (which was not [Mr. Leonard]) during the underlying sentencing hearing in the District Court . . . ." Leonard Affidavit at ¶ 3. This undermines a claim that *Moshin* resulted in personal bias against Leonard.

Finally, the affidavits filed by defense counsel and Barr do not set forth facts but instead assert opinions about the Court. Even if the affidavits show bias to defense counsel, they do not establish that such bias has been or will be imputed to the defendant. In *Sykes*, the Seventh Circuit noted that "bias against counsel alone is insufficient because section 144 makes clear on its face that antipathy to an attorney is insufficient grounds for

9

disqualification of a judge because it is not indicative of extrajudicial bias against a party." 7 F.3d 1331 (internal citations, quotations, and bracket omitted). In order to impute bias to a defendant, there must be facts alleged "suggesting that the alleged bias against counsel might extend to the party." *Id.* In *Sykes*, the Seventh Circuit found that showing had not been made because the allegations imputing bias to the party were "merely conclusory and insufficient." *Id.* Similarly, in this case, both Barr and defense counsel have made conclusory allegations of bias without facts imputing that bias to Barr.

Therefore, for all the reasons stated above, defendant's motion to recuse and disqualify should be denied.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ Jason A. Yonan
JASON A. YONAN
SARAH J. NORTH
Assistant U.S. Attorneys
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-0708

Dated: January 14, 2019