IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 14-cr-287 |
| | ) |
| WARREN N. BARR, III, | ) Hon. Charles R. Norgle |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is Defendant Warren Barr's ("Defendant") Motion to Recuse and Disqualify pursuant to 28 U.S.C. §§ 144 and 455 (a), (b)(1). For the following reasons, Defendant's motion is denied.

## I. BACKGROUND

On May 15, 2014, Defendant Warren N. Barr, III ("Defendant") was charged in an indictment with seven counts of bank fraud, in violation of 18 U.S.C. § 1344, and four counts of making a false statement to a financial institution, in violation of 18 U.S.C. § 1014. Defendant was indicted along with five other individuals for a scheme to defraud numerous financial institutions in connection with the sale of approximately 60 condominium units located in the "Vision on State" building at 1255 S. State Street, Chicago, Illinois. Vision on State was built between 2004 and 2008 by 13th and State, LLC, and contains approximately 250 residential condominium units. Defendant was a member of 13th and State, LLC and a real estate developer who facilitated the construction, development, and sale of condominium units at Vision on State.

Defendant was in Saudi Arabia at the time of his indictment, and at some point, he was arrested the by local authorities for matters unrelated to his indictment here in the United States. However, Defendant eventually returned to the United States and on February 4, 2015, he was

arrested in the Eastern District of Virginia on the bench warrant issued by this Court. Thereafter, Defendant entered a plea of not guilty and was released on bond.

On June 17, 2016, Defendant entered into a written Plea Agreement with the Government wherein he agreed to plead guilty to Count Ten of the indictment, charging him with making a false statement to a financial institution, in violation of 18 U.S.C. § 1014. See Dkt. 152, Plea Agreement. More specifically, Defendant admits in the signed Plea Agreement that on or about May 13, 2008, he knowingly made a false statement and report for the purpose of influencing Bank of America, N.A. to fund a loan in the amount of $417,000.00 for Defendant himself to purchase a unit in the Vision on State building. Id. at 2. Defendant reserved the right to challenge various sentencing enhancements under the advisory Sentencing Guidelines, including the loss amount under Guideline § 2B1.1(b)(1). Id. at 9.

On June 17, 2016, the Court held a change of plea hearing, where Defendant entered a plea of guilty to Count Ten of the indictment and sentencing was set for October 12, 2016. However, over the next two years, the sentencing hearing was rescheduled twelve times.

On March 21, 2017, Defendant filed a motion for discovery pursuant to Brady v. Maryland, 373 U.S. 83 (1967), seeking documents related to his arrest and purported six-month detention in Saudi Arabia. The Court granted Defendant's motion for discovery in its March 24, 2017 Order. Thereafter, on the Government's motion, the Court designated a classified security officer for this case, Dkt. 193, based on the Government's representation that some of the materials requested by Defendant may contain classified information. Dkt. 190, p. 2.

Following the Court's March 24, 2017 Order, the Government produced various materials pertaining to Defendant's dentition in Saudi Arabia. The Government also arranged for Defendant and his counsel at the time, Patrick E. Boyle ("Mr. Boyle"), to review classified materials related

2

to the matter. On November 27, 2018, while Mr. Boyle was still Defendant's counsel of record, the Government produced additional materials which concerned, *inter alia*, the Government's attempts to bring Defendant back to the United States.

On November 15, 2018, attorney Michael Irving Leonard ("Mr. Leonard") filed a motion for leave to substitute counsel and to re-set the sentencing hearing date. This motion to substitute counsel came only weeks prior to Defendant's sentencing hearing scheduled for December 5, 2018. The motion stated that Defendant had terminated his attorney-client relationship with Mr. Boyle and that Defendant was seeking to substitute Mr. Leonard as counsel. The motion also requested that the sentencing hearing be continued for an unspecified period of time. Finally, the motion, which was signed by Mr. Leonard, stated that "[n]o party will be prejudiced by this Motion, and it is not brought for any improper purpose." Dkt. 286, p. 1.

During the November 30, 2018 motion hearing, the Court granted Defendant's request to substitute counsel. However, the Court denied Defendant's request to continue the sentencing hearing for 90 days. Mr. Leonard requested the 90-day continuance so that he could attempt to obtain a security clearance from the government to review certain classified documents pertaining to Defendant's detention in Saudi Arabia—documents that were previously tendered to Defendant through his prior counsel, Mr. Boyle. Although the Court did not grant the requested 90-day continuance, it did continue sentencing hearing until January 8, 2019. See Dkt. 294, Transcript of November 30, 2018 Motion Hearing, p. 3.

On January 2, 2019, over two and half years since Defendant's guilty plea and less than one week before the long-delayed sentencing hearing, Defendant filed three motions: (1) a motion to dismiss the indictment, Dkt. 298; (2) a motion to withdraw his guilty plea, Dkt. 300; and (3) a motion to continue the sentencing hearing, Dkt. 302. On January 7, 2019, the Court issued two

orders, denying all three motions. Dkt. 312, 313. Thus, the sentencing hearing proceeded as scheduled on January 8, 2019.

At the start of the January 8, 2019 sentencing hearing, the Government made an oral motion to present certain classified documents for the Court to review *ex parte*. Dkt. 321, Transcript of January 8, 2019 Sentencing Hearing ("Sentencing Tr."), pp. 2-3. The Court sustained Mr. Leonard's objection and ruled that the Court would not consider anything that happened to Defendant in Saudi Arabia. Id. at 6. Thereafter, the Government presented its first and only witness and Mr. Leonard cross-examined the witness. The Government also submitted a binder of exhibits and provided these exhibits to Mr. Leonard before his cross-examination. Mr. Leonard ended his own cross-examination of the Government's witness. After the Court heard from the Government's witness, Mr. Leonard indicated that Defendant had no witnesses and that Defendant would not be testifying. Id. at 65-66. The Court then heard the Government's arguments as to the relevant enhancements under the Sentencing Guidelines, followed by Mr. Leonard's arguments on the same.

During Mr. Leonard's arguments, the Court asked him whether Defendant had submitted a financial statement in compliance with his plea agreement. Id. at 83. What followed was a lengthy exchange between the Court and Mr. Leonard, wherein Mr. Leonard never directly answered the question, and instead argued that the probation officer assigned to the case was in a better position to answer the question. Id. at 83-86. Mr. Leonard also stated that "every time I try to talk, you interrupt me and cut me off. Okay?" Id. at 84-85. The Court responded that Mr. Leonard was choosing to "fence with the Court" and that his answers were "obfuscations." Id. at 85. This exchange continued sporadically while Mr. Leonard submitted various documents related to Defendant's financial condition. Eventually, Mr. Leonard proceeded with his remaining arguments

4

regarding sentencing enhancements, including that the enhancement for Defendant's receipt of $1 million or more in gross receipts was not applicable since the Government had withdrawn this enhancement. Id. at 104. On this point, the Court ruled that it would "accept the agreed position and disregard this issue of the $1 million." Id. at 106. After finishing his arguments related to sentencing enhancements, Mr. Leonard began discussing sentencing factors under 18 U.S.C. § 3553.

While making his arguments as to § 3553 factors, Mr. Leonard attempted to bring up Defendant's detention in Saudi Arabia, and the Court quickly reminded him of its earlier ruling that it would not consider anything that happened to Defendant in Saudi Arabia. Id. at 117. The Court instructed Mr. Leonard to stop talking on the point. Id. at 118. However, Mr. Leonard persisted in raising the issue of Saudi Arabia until the Court again instructed him to "[s]top talking about that point and move on to another point." Id. At this juncture, Mr. Leonard called for a five-minute recess, which the Court granted. Id. at 119. When the hearing resumed several minutes later, Mr. Leonard immediately stated "at this time I would make a motion for recusal based upon the following six reasons," to which the Court responded "[p]ut it in writing and give it to me tomorrow morning. We'll adjourn for the day." Id.

Defendant filed the instant motion to recuse and disqualify on January 8, 2019. Dkt. 316. Over the next week, he filed three more documents, styled as supplements to the instant motion. Dkt. 317, 322, 323. The first two supplemental filings concern the availability of and citations to the transcript for the sentencing hearing, and the third filing is Defendant's affidavit in support of the instant motion. All four filings will be considered as one motion.

On January 9, 2019, the Court entered an order directing the Government to file its response to the instant motion on or before January 14, 2019; the Court also continued the sentencing

5

hearing to January 14, 2019. Dkt. 319. The government filed a timely response and the Court granted Defendant leave to file his reply on or before January 18, 2019. Thereafter, the Court continued the sentencing hearing three more times, until January 31, 2019.

## II. DISCUSSION

In the instant motion, Defendant states that his present counsel, Mr. Leonard, was involved in arguing United States v. Ruby Mohsin, Case No. 18-1275, before the United States Court of Appeals for the Seventh Circuit. In Mohsin, the Seventh Circuit reviewed this Court's sentencing of Mrs. Mohsin and her co-defendant, Mohammad Khan. On September 25, 2018, the Seventh Circuit issued a written opinion, vacating the sentences imposed by this Court and remanding the case for resentencing pursuant to Circuit Rule 36; thus, the case was remanded to a different district court judge for resentencing. See United States v. Mohsin, 904 F.3d 580, 586 (7th Cir. 2018). Although Mr. Leonard was not involved in the sentencing hearing for Mrs. Mohsin before this Court, Defendant avers that this Court was aware of his involvement in the Mohsin appeal because the appellate court's decision was posted on the district court's docket. He also states that certain quotes from Mr. Leonard regarding the case appeared in the press.[1]

Defendant argues that Mr. Leonard's involvement in the appeal of Mohsin, along with the Court's conduct toward Mr. Leonard at the both the November 30, 2018 and January 8, 2019 hearings—which he seeks to characterize as "openly hostile"—creates the "unmistakable appearance of bias or prejudice toward Mr. Leonard and Defendant," and therefore warrants recusal under 28 U.S.C. § 455(a). Def.'s Mot. to Recuse and Disqualify ¶¶ 8, 10, 20. Defendant further argues that pursuant to 28 U.S.C. §§ 144 and 455(b)(1), the Court should disqualify itself

---

[1] Defendant's motion relies in part on the allegation that the Court was aware that Mr. Leonard argued Mohsin before the Seventh Circuit prior to his appearance in this case. However, the Court was not aware of Mr. Leonard's participation in the appeal of Mohsin prior to Defendant's filing of the instant motion. Moreover, the Court was completely unaware of Mr. Leonard's existence prior to his appearance in this case.

6

from these proceedings because it has an *actual* bias or prejudice against Defendant, based on the Court's conduct and Mr. Leonard's role in the Mohsin appeal. Def.'s Mot. to Recuse and Disqualify ¶ 21. Defendant also argues that the Court erred in allowing the Government to file a response, and that the instant motion should be granted for this reason alone.

Before the Court addresses Defendant's arguments, it is necessary to provide some context to the Court's conduct at the sentencing hearing. Thus, the Court will first provide a summary of the relevant rules governing the role of a district court judge at sentencing. Next, the Court will discuss the applicable standards for recusal under 28 U.S.C. §§ 144 and 455. Finally, the Court will address Defendant's arguments.

## A. The Role of a District Court Judge at Sentencing

Federal sentencing hearings are adversarial in nature. Compared to trial proceedings, sentencing hearings are not as formal and are governed by different procedural rules—namely, Rule 32 of the Federal Rules of Criminal Procedure and Chapter Six of the Guidelines Manual. For example, the Federal Rules of Evidence do not apply. Fed. R. Evid. 1101(d)(3); United States v. Ghiassi, 729 F.3d 690, 695 (7th Cir. 2013) ("In the sentencing context, the district court is not bound by the rules of evidence and, so long as it is reliable, may consider a wide range of evidence, including hearsay, that might otherwise be inadmissible at trial."). Nor does the Sixth Amendment Confrontation Clause apply. Ghiassi, 729 F.3d at 695. During the hearing, the court is required to allow both parties the opportunity to comment prior to the sentence being imposed. See Fed. R. Crim. P. 32(i). At the court's discretion, the parties are provided an opportunity to call witnesses and present evidence about disputed facts or other matters, e.g., mitigating or aggravating factors. Id.

"[F]or any disputed portion of the presentence report or other controverted matter," the court must "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). Facts relevant to sentencing should be proved by a preponderance of the evidence. United States v. England, 555 F.3d 616, 622 (7th Cir. 2009); see also United States v. Krieger, 628 F.3d 857, 862 (7th Cir. 2010) (a preponderance of the evidence standard is used when sentencing factors do not increase defendant's sentence beyond statutory range). If the defendant contests the accuracy or reliability of the presentence report, he carries the burden of putting forward rebuttal evidence. United States v. Rollins, 544 F.3d 820, 838 (7th Cir. 2008).

The United States Sentencing Commission promulgated the Federal Sentencing Guidelines pursuant to 28 U.S.C. § 994(a). Courts are not required to apply the recommendations set forth in the Guidelines but must take them into account during sentencing. United States v. Booker, 542 U.S. at 264. The Guidelines prescribe a specific procedure that the sentencing court should use to determine an appropriate sentence. See USSG § 1B1.1. After the base offense level has been established, the court is instructed to determine the guideline range, which includes examining the defendant's relevant conduct. § 1B1.3. At its core, relevant conduct is the "range of conduct that is relevant to determining the applicable offense level." § 1B1.3, cmt. backg'd. Subsection (a)(1) provides the basic rules of relevant conduct applicable to all offenses: relevant conduct includes actions of the defendant performed in preparation for the offense, during the offense, and after the offense to avoid detection. In addition, when a defendant participated in "jointly undertaken criminal activity," the defendant is liable for all acts and omissions of other that were: (1) within the scope of the jointly undertaken criminal activity, (2) in furtherance of the criminal activity, and (3) reasonably foreseeable in connection with the criminal activity. §1B1.3(a)(1)(B).

8

The scope of relevant conduct that a court can consider is not limited to conduct that the defendant has been held criminally liable. U.S.S.G. § 1B1.3, cmt. n. 1 (the "principles and limits of sentencing accountability under" the relevant-conduct guideline "are not always the same as the principles and limits of criminal liability."). To that extent, "[a]cquitted or uncharged offenses constitute relevant conduct if they occurred during the commission of the offense of conviction." United States v. King, 910 F.3d 320, 329 (7th Cir. 2018), reh'g denied (Jan. 4, 2019) (citing U.S.S.G. § 1B1.3(a)(1)).

In short, a court "may appropriately conduct an inquiry [at sentencing] broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it may come." United States v. Modjewski, 783 F.3d 645, 650 (7th Cir.2015) (citation and internal quote omitted). Furthermore, because sentencing is a "non-jury proceeding[], questioning by the judge will rarely be prejudicial to the defendant." Id. (citation omitted). The judge's tone while questioning a defendant or his counsel may be harsh and feel like cross-examination; however, it is the judge's role to gather all necessary and reliable information to impose a proper sentence. Id. The Court underscores that as of the date of this Opinion and Order, Defendant has thus far exercised his right to remain silent.

## B. Standards for Recusal and Disqualification

### 1. 28 U.S.C. § 144

Section 144 protects parties from proceeding in a case before a judge that has a "personal bias or prejudice" against them. 28 U.S.C. § 144. The movant must submit a "timely and sufficient affidavit" with the motion. Id. Within the affidavit, the "factual averments must show that the bias is personal rather than judicial, and that it stems from an extrajudicial source—some source other than what the judge has learned through participation in the case." United States v. Balistrieri, 779

9

F.2d 1191, 1200 (7th Cir. 1985).

When addressing a motion under § 144, the presiding "judge is allowed to pass only on the timeliness and sufficiency of the affidavit, accepting the factual averments as true." Id.; see also Berger v. United States, 255 U.S. 22, 36 (1921). "[I]f a party files a timely and sufficient affidavit, the judge shall proceed no further." Balistrieri, 779 F.2d at 1200. However, "the statute is to be strictly construed, and the judge is presumed to be impartial, so that a party seeking recusal bears a heavy burden." Id. at 1199 (citations omitted). If the affidavit is not timely and sufficient, recusal is not required. See United States v. Sykes, 7 F.3d 1331, 1340 (7th Cir. 1993); see also Balistrieri, 779 F.2d at 1202. The affidavit must: 1) be submitted by "a party to the proceeding"; 2) "state the facts and the reasons for the belief that bias or prejudice exists"; 3) be filed not less than ten days before a matter is to be heard unless there is "good cause" for the delay; and 4) "be accompanied by a certificate of counsel of record stating that it is made in good faith." 28 U.S.C. § 144.

### 2. 28 U.S.C. § 455(a) and (b)(1)

Section 455(a) "requires a federal judge to 'disqualify himself in any proceeding in which his impartiality might reasonably be questioned.'" Liteky v. United States, 510 U.S. 540, 541 (1994) (quoting 28 U.S.C. § 455(a)). "In evaluating whether a judge's impartiality might reasonably be questioned, [the] inquiry is 'from the perspective of a *reasonable* observer who is *informed of all the surrounding facts and circumstances.*'" In re Sherwin-Williams Co., 607 F.3d 474, 477 (7th Cir. 2010) (emphasis in original) (quoting Cheney v. United States Dist. Court, 541 U.S. 913, 924 (2004)). A reasonable observer in this context is a "well-informed, thoughtful observer rather than…a hypersensitive or unduly suspicious person." Hook v. McDade, 89 F.3d 350, 354 (7th Cir. 1996).

Section 455(b)(1), on the other hand, requires a federal judge to disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C.A. § 455(b)(1). "As the Supreme Court has explained, neither judicial rulings nor opinions formed by the judge as a result of current or prior proceedings constitute a basis for recusal 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" United States v. White, 582 F.3d 787, 807 (7th Cir. 2009) (quoting Liteky, 510 U.S. at 555). "Judges have discretion in running their cases, and '[a] judge's ordinary efforts at courtroom administration…remain immune' from charges of partiality, even if the judge exhibits 'impatience, dissatisfaction, annoyance, and even anger.'" In re City of Milwaukee, 788 F.3d 717, 723 (7th Cir. 2015) (quoting Liteky, 510 U.S. at 555–56).

**C. Recusal is Not Warranted Under §§ 144 or 455**

Defendant argues that recusal is warranted under §§ 144 and 455 (b)(1) because the Court has actual bias or prejudice against Defendant, based on Mr. Leonard's participation in the Mohsin appeal and the Court's purportedly "hostile" conduct toward Mr. Leonard. Defendant also argues that even if there is no *actual* bias, the facts presented in his motion establish the "unmistakable appearance of bias or prejudice toward Mr. Leonard and Defendant," and therefore recusal is warranted under § 455(a). For the following reasons, the instant motion fails to provide grounds for recusal under either §§ 144 or 455(a), (b)(1).

First, while Defendant has submitted an affidavit in support, Mr. Leonard did not file a certificate stating that the affidavit was made in good faith. To the extent that Defendant moves for recusal under § 144, his motion could be denied for this reason alone. See Balistrieri, 779 F.2d at 1199 (stating that the requirements of § 144 are "strictly construed."); see also United States v.

11

Betts-Gaston, 860 F.3d 525, 537 (7th Cir. 2017), cert. denied, 138 S. Ct. 689, 199 L. Ed. 2d 537 (2018) (affirming the district court judge's denial of defendant's motion to recuse under § 144 because, *inter alia*, the defendant's counsel did not file a certificate stating the affidavit was made in good faith).

Second, Defendant's affidavit is untimely. The Seventh Circuit has made clear that "[a] section 144 affidavit is not timely unless filed 'at the earliest moment after [the movant acquires] knowledge of the facts demonstrating the basis for such disqualification.'" United States v. Sykes, 7 F.3d 1331, 1339 (7th Cir. 1993) (quoting United States v. Barnes, 909 F.2d 1059, 1071 (7th Cir.1990). Defendant points to the Court's purportedly hostile conduct toward Mr. Leonard at the November 30, 2018 hearing as evidence of the Court's bias. However, Defendant waited until January 8, 2019—over a month later—to file his affidavit. Thus, there is no question that Defendant did not file his affidavit at the "earliest moment" after he claims to have learned of the Court's alleged bias. Moreover, Mr. Leonard first raised the issue *during the January 8, 2019 sentencing hearing*, shortly before allocution. See Ex parte Am. Steel Barrel Co., 230 U.S. 35, 44 (1913) (stating that a motion for recusal should not be used "to paralyze the action of a judge who has heard the case, or a question in it, by the interposition of a motion to disqualify him between a hearing and a determination of the matter heard."). Further, Defendant does not argue that there was "good cause" for his untimely filing. Accordingly, the instant motion was untimely filed under § 144. Betts-Gaston, 860 F.3d at 538 (holding that motion seeking recusal was untimely, coming on the eve of sentencing, and addressing events at trial, four months before the filing).

Third, while Defendant seeks to portray the Court's conduct towards Mr. Leonard as "hostile," the conduct referenced in this motion was nothing more than the Court's ordinary efforts to administer Defendant's sentencing hearing; such routine administrative efforts do not support

recusal under either §§ 144 or 455. See Liteky, 510 U.S. at 555–56. Defendant points to numerous interactions between the Court and Mr. Leonard, in which he claims that the Court "interrupted" Mr. Leonard; exhibited "hostile" conduct toward Mr. Leonard; and treated Mr. Leonard less favorably than the Assistant United States Attorneys assigned to the case. See Dkt. 322, Def.'s Second Supplement ¶ 4. Defendant points to one such interaction, wherein the Court asked Mr. Leonard whether Defendant had submitted a financial statement to the probation department in compliance with the written Plea Agreement:

> THE COURT: Are you going to answer that question?
> MR. LEONARD: Well, I'm going to tell you what happened, Judge. I walked over--
> THE COURT: Okay.
> MR. LEONARD: -- to that side of the room.
> THE COURT: All right.
> MR. LEONARD: I spoke with Ms. Kwong--
> THE COURT: Is the financial statement contained in the presentence investigation report of January 10th, 2017?
> MR. LEONARD: There is no attachment of that type, Judge.
> THE COURT: Is it in there?
> MR. LEONARD: Judge, like I just said -- no, it is not in there.
> THE COURT: No, you said there is something about an attachment.
> MR. LEONARD: Judge, I was trying to –
> THE COURT: I'm saying, is it in the report?
> MR. LEONARD: Your Honor, every time I try to talk, you interrupt me and cut me off. Okay? It makes it very much impossible for me to create my record in this case.
> THE COURT: No, because – I'll tell you why, because you fence with the Court.
> MR. LEONARD: Excuse me?
> THE COURT: You fence with the Court.
> MR. LEONARD: No, I try to speak, and you stop me.
> THE COURT: No.
> MR. LEONARD: This happened before, Judge.
> THE COURT: Because your answers are not directly on point.
> MR. LEONARD: Okay.
> THE COURT: They are obfuscations --
> MR. LEONARD: Okay. Well, you said that happened --
> THE COURT: -- and you choose to fence with the Court. I asked you to inquire of your client whether he did, and your reference then was to the probation officer.
> MR. LEONARD: Because I think she's in a better position to answer my question.
> THE COURT: Well, if your client chooses --
> MR. LEONARD: The probation --
> THE COURT: -- not to answer that question --

13

>   MR. LEONARD: No, Judge, I didn't say that.
>   THE COURT: Well, then the question is, did he, when he went to the probation department, submit financial information that is included in the financial report?
>   MR. LEONARD: Here's what I can tell you, Judge. Number one, I wasn't at the PSR, as you know, because I wasn't counsel. Number two, I just spoke briefly to Ms. Kwong, who you could put under oath. She told me he did submit something. When I started to tell you that, you stopped me. So I think the person who is in the best position to answer the question would be her and not me.
>   THE COURT: You just demonstrated again fencing with the Court and obfuscation.

Sentencing Tr. at 84-86. This interaction is similar to the other interactions complained of by Defendant, in regard to Mr. Leonard's propensity for fencing[2] with the Court and repeated obfuscations[3].

Defendant's characterization of the Court's conduct as "hostile" is disingenuous because it ignores the Court's duty to ensure that Defendant's sentencing hearing was properly conducted. See United States v. Young, 470 U.S. 1, 10-11 (1985) ("[T]he judge is not a mere moderator, but is the governor of the [proceeding] for the purpose of assuring its proper conduct and of determining questions of law."); see also Modjewski, 783 F.3d 645, 650 (7th Cir. 2015) (stating that at sentencing, "while the tone and content of the judge's questions read somewhat like a cross-examination, it is the judge's role to fashion a sentence based on information with a sufficient indicia of reliability."). What Defendant now seeks to characterize as "hostile" conduct was nothing more than the Court's "ordinary efforts at courtroom administration," when faced with Mr. Leonard's repeated obfuscations and attempts to fence with the Court. Accordingly, Defendant presents no valid basis for recusal because the Court's "ordinary efforts at courtroom administration [are] immune from charges of impartiality." In re City of Milwaukee, 788 F.3d at

---

[2] The definition of "fencing" includes: "a parrying of arguments; evasion of direct answers." Fencing, WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY (1989).
[3] The definition of "obfuscate" includes: "1. to confuse, bewilder, or stupefy. 2. to make obscure." Obfuscate, WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY (1989).

723; see also Liteky, 510 U.S. at 556 (finding inadequate grounds for recusal based on the judge's "judicial rulings, routine trial administration efforts, and ordinary admonishments.").

Further, recusal would not be warranted even if the Court did display "hostile" conduct toward Mr. Leonard. In Liteky, the Supreme Court held that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." 510 U.S. at 555 (emphasis in original). Here, Defendant does not argue that the Court revealed any actual *opinion* derived from an extrajudicial source; rather he has focused solely on the general conduct of the Court during the sentencing hearing, which is insufficient by itself to support recusal. Id. Further, Defendant fails to develop any coherent argument as to how fair judgment would be impossible for Defendant in this case. Assuming *arguendo* that Defendant did address this point, the Court would reject the argument, especially given that the only two substantive rulings made by the Court at the January 8, 2019 sentencing hearing were *in favor of Defendant*.

Fourth, Defendant's motion focuses on the Court's alleged bias toward Mr. Leonard and fails to show how the alleged bias extends to Defendant. Under both §§ 144 and 455(b)(1), recusal is warranted when a judge has a personal bias or prejudice against a *party*; neither statute addresses a judge's bias toward counsel alone. The Seventh Circuit has stated that a judge's "antipathy to an attorney is insufficient grounds for disqualification," unless the party seeking recusal alleges facts "suggesting that the alleged bias against counsel might extend to the party." Sykes, 7 F.3d at 1339.

Here, Defendant merely states in conclusory fashion that the Court's "conduct clearly creates the unmistakable appearance of bias or prejudice towards me, in of the fact that I am

15

represented by counsel." Dkt. 323, Affidavit of Warren N. Barr (Barr Aff.) ¶ 9. However, the Seventh Circuit has held that such conclusory allegations in this context are insufficient to require recusal. Sykes, 7 F.3d at 1340. Defendant also states that "[t]he hostility exhibited by [Court] extended to me as Mr. Leonard was not allowed to make arguments, set out basic points, preserve the record, or have material information considered by the Court." Barr Aff. ¶ 7. But this statement lends no support, because, as discussed above, the Court's judicial rulings and routine administrative efforts—as Defendant describes here—are immune from charges of impartiality. See In re City of Milwaukee, 788 F.3d at 723.

Fifth, the Court addresses Defendant's argument for recusal under § 455(a), which "requires a federal judge to 'disqualify himself in any proceeding in which his impartiality might reasonably be questioned.'" Liteky, 510 U.S. at 541 (quoting 28 U.S.C. § 455(a)). In applying this objective standard, the Court rejects that a reasonable observer who is informed of all the surrounding facts and circumstances would question the Court's impartiality in this case. See In re Sherwin-Williams Co., 607 F.3d at 477. Rather, only the most suspicious of individuals would conclude that a district court judge would maintain bias against a criminal defendant, based solely upon on his counsel's participation in an appeal wherein the judge's sentencing decision in an unrelated matter was reversed and remanded to a different judge. Simply put, a reasonable observer would not assign such a petty disposition to a federal judge. Moreover, a reasonable observer would recognize that the Court's conduct at the September 30, 2018 and January 8, 2019 hearings consisted of nothing more than routine efforts to administer the hearing, rather than any undue hostility as asserted by Defendant. Moreover, the Court finds it significant that Defendant is unable to cite a single case in support with even vaguely similar facts. Accordingly, recusal is not warranted under § 455(a) because only a "hypersensitive or unduly suspicious person" would

question the Court's impartiality in this case. See Hook, 89 F.3d at 354.

Finally, the Court addresses Defendant's argument that the instant motion should be summarily granted for the sole reason that the Court allowed the Government an opportunity to respond, citing In re Nat'l Union Fire Ins. Co., 839 F.2d 1226 (7th Cir. 1988). The Court rejects this argument, because Nat'l Union Fire does not stand for the proposition that a motion for recusal must be granted whenever a court permits a response.

In Nat'l Union Fire, the district court judge was advised by his son, a lawyer, that he represented a bank—which was a party in a case pending before the judge—in an unrelated complex creditor transaction. 839 F.2d at 1227. Upon learning of this fact, the judge immediately informed counsel and asked them to provide their observations to ensure that all possible considerations would be taken into account regarding whether his impartiality might be questioned. Id. at 1227-1228. After reviewing the material presented from the law firms representing the various parties, the judge ultimately determined that recusal was not necessary.

The Seventh Circuit reviewed the judge's refusal to recuse himself under § 455(a). The court first determined that the representative capacity of the judge's son did not require recusal. Id. at 1230 ("A judge who cannot be expected to remain impartial through trivial matters such as this should not be sitting even when his family is unaffected."). Next, the court turned to whether soliciting advice from counsel was sufficient alone to require recusal. Id.

The court began its analysis by recognizing that judges "should refrain from asking for the views of counsel" on the matter of recusal. Id. at 1231. In support of this statement, the court quoted Resolution L of the Judicial Conference, which provides:

In all cases involving actual, potential, probable or possible conflicts of interests, a federal judge should reach his own determination as to whether he should recuse

17

himself from a particular case, without calling upon counsel to express their views as to the desirability of his remaining in the case. The too frequent practice of advising counsel of a possible conflict, and asking counsel to indicate their approval of a judge's remaining in a particular case is fraught with potential coercive elements which make this practice undesirable.

Defendant cites to these specific statements in Nat'l Union Fire, but he does so out of context, and ultimately, he misrepresents the court's holding. Contrary to Defendant's argument, the court determined that the judge's solicitation of advice from counsel *alone* did not require recusal. Id. Rather, the court rejected the Advisory Committee on Codes of Conduct of the Judicial Conference recommendation that the judge must recuse himself. Id. at 1230-31 ("The Advisory Committee on Codes of Conduct took a different view. It concluded that a judge who solicits advice from counsel must stand aside if counsel objects, even though judicial service does not present an appearance of impropriety. Despite our respect for the Committee's expertise on this subject, we do not agree."). The court ultimately held that "[a]ny transgression against the policies underlying Resolution L is not itself grounds for disqualification." Id. (reasoning that the judge "did not try to bulldoze counsel into 'approving' his continued participation in the case.").

Defendant does not cite any case law that supports his interpretation of Nat'l Union Fire. Rather, his argument is directly contradicted by numerous cases decided after Nat'l Union Fire. See United States v. Salahuddin, 608 F. Supp. 2d 1061, 1069 (E.D. Wis. 2009) ("[Nat'l Union Fire] does not hold that judges must never ask for counsel's views, nor does it state that a judge must always recuse if he does."); United States ex rel. Britz v. Thieret, 737 F. Supp. 59, 60 (C.D. Ill. 1990) ("[W]e thought it advisable to seek the parties' views and authorities on the matter [of recusal], even though we are well aware that the final analysis and decision on recusal falls on

these shoulders alone."); Cent. Tel. Co. of Virginia v. Sprint Commc'ns Co. of Virginia, No. 3:09CV720, 2011 WL 6178652, at *5 (E.D. Va. Dec. 12, 2011), aff'd, 715 F.3d 501 (4th Cir. 2013) ("Where, as here, the parties have invested such extensive time and resources into a case, one judgment on the merits has been entered, and another claim has been tried on its merits, it would be unfair, and a likely denial of due process, to refuse a party's request to brief issues, the resolution of which has such serious consequences. The instruction of the Judicial Conference cannot reasonably be interpreted to mean that a court should deny briefing on a recusal issue if a party requests it."); see also United States v. Kelly, 888 F.2d 732, 745 (11th Cir. 1989) ("[A]s a *general rule*, a federal judge should reach his own determination on recusal, without calling upon counsel to express their views." (emphasis added)).

Here, at Defendant's January 8, 2019 sentencing hearing, Defendant made an oral motion for recusal and the hearing was continued to the next day, allowing time for Defendant to file a written motion. At the January 9, 2019 hearing, the Court asked the Government how long it needed to file a written response; the Court did not inquire as to the Government's position regarding recusal. The Court's conduct here cannot be characterized as attempting to "bulldoze" counsel into approving its continued participation in this matter. Nat'l Union Fire, 839 F.2d at 1231. Thus, the Court rejects Defendant's argument that the instant motion should be summarily granted for the sole reason that the Court allowed the Government an opportunity to respond. This argument is not supported by the relevant facts of this matter or pertinent case law. Nevertheless, out of abundance of caution, the Court will strike the Government's response, Dkt. 326. Further, the Court makes clear that the contents of the Government's response were not considered in deciding and formulating this Opinion and Order.

## III. CONCLUSION

Defendant has failed to show that recusal is warranted under either 28 U.S.C. §§ 144 or 455(a), (b)(1). Accordingly, Defendant's Motion to Recuse and Disqualify is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: January 29, 2019