## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 14-cr-287 |
| | ) |
| WARREN N. BARR, III, | ) Hon. Charles R. Norgle |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is Defendant Warren N. Barr's ("Defendant") motion for release pending

Appeal, pursuant to Federal Rule of Appellate Procedure 9(b) and 18 U.S.C. §§ 3142, 3143, and

3145(c). For the following reasons Defendant's motion is denied.

### I. BACKGROUND

The background of this case has been thoroughly discussed by the Court in previous orders.

See Dkt. 312, 313, 334. Nevertheless, some recapitulation is better than simply leaving the facts

and the Court's reasoning scattered over numerous orders.

Defendant was charged in an indictment with seven counts of bank fraud, in violation of

18 U.S.C. § 1344, and four counts of making a false statement to a financial institution, in violation

of 18 U.S.C. § 1014. Defendant was indicted along with five other individuals for a "builder

bailout" scheme, where the defendants defrauded numerous financial institutions in connection

with the sale of approximately 60 condominium units located in the "Vision on State" building at

1255 S. State Street, Chicago, Illinois. Vision on State was built between 2004 and 2008 by 13th

and State, LLC, and contains approximately 250 residential condominium units. Defendant was a

member of 13th and State, LLC and a real estate developer who facilitated the construction,

development, and sale of condominium units at Vision on State. The loss amount suffered by the victims in this case was $12,608,238.

Defendant was in Saudi Arabia at the time of his indictment. In August 2014, he was arrested and detained by Saudi Arabian authorities for matters unrelated to his indictment here in the United States. In February 2015, Defendant was released and returned to the United States. On February 4, 2015, he was arrested in the Eastern District of Virginia on a bench warrant issued by this Court. Thereafter, Defendant entered a plea of not guilty and was released on bond.

On June 17, 2016, Defendant pleaded guilty to Count Ten of the indictment, charging him with making a false statement to a financial institution, in violation of 18 U.S.C. § 1014. See Dkt. 152. Over the next two years, Defendant's sentencing hearing was rescheduled over a dozen times.

On March 21, 2017, Defendant filed a motion for discovery pursuant to Brady v. Maryland, 373 U.S. 83 (1967), seeking documents from the Government related to his arrest and purported six-month detention by Saudi Arabian authorities. The Court granted Defendant's motion for discovery in its March 24, 2017 Order. Thereafter, on the Government's motion, the Court designated a classified security officer for this case, Dkt. 193, based on the Government's representation that some of the materials requested by Defendant may contain classified information. Dkt. 190 at 2.

Following the Court's March 24, 2017 Order, the Government produced various materials pertaining to Defendant's arrest and dentition in Saudi Arabia. The Government also arranged for Defendant and his counsel at the time, Patrick E. Boyle ("Mr. Boyle"), to review classified materials related to the matter. On November 27, 2018, while Mr. Boyle was still Defendant's counsel of record, the Government produced additional materials which concerned, *inter alia*, the Government's attempts to bring Defendant back to the United States.

2

On November 15, 2018, attorney Michael Irving Leonard ("Mr. Leonard") filed a motion for leave to substitute counsel and to re-set the sentencing hearing date. This motion to substitute counsel came only weeks prior to Defendant's sentencing hearing scheduled for December 5, 2018. The motion stated that Defendant had terminated his attorney-client relationship with Mr. Boyle and that Defendant was seeking to substitute Mr. Leonard as counsel. The motion also requested that the sentencing hearing be continued for an unspecified period of time. Finally, the motion, which was signed by Mr. Leonard, stated that "[n]o party will be prejudiced by this Motion, and it is not brought for any improper purpose." Dkt. 286, p. 1.

During the November 30, 2018 motion hearing, the Court granted Defendant's request to substitute counsel. However, the Court denied Defendant's request to continue the sentencing hearing for 90 days. Mr. Leonard requested the 90-day continuance so that he could attempt to obtain a security clearance from the Government to review certain classified documents pertaining to Defendant's detention in Saudi Arabia—documents that were previously tendered to Defendant and his prior counsel, Mr. Boyle, who did have the required security clearance. The request for a continuance was based on the supposition that Mr. Leonard would in fact be granted the required security clearance. Although the Court did not grant the requested 90-day continuance, it did continue the sentencing hearing until January 8, 2019. See Dkt. 294 at 3.

On January 2, 2019, over two and half years since Defendant's guilty plea and less than one week before the long-delayed sentencing hearing, Defendant filed three motions: (1) a motion to dismiss the indictment, Dkt. 298; (2) a motion to withdraw his guilty plea, Dkt. 300; and (3) a motion to continue the sentencing hearing, Dkt. 302. As discussed in greater detail *infra*, the Court denied all three motions on January 7, 2019. See Dkt. 312, 313. Thus, the sentencing hearing proceeded as scheduled on January 8, 2019.

3

At the start of the January 8, 2019 sentencing hearing, the Government made an oral motion to present certain classified documents regarding Defendant's incarceration in Saudi Arabia, for the Court to review *ex parte*. Dkt. 321, Transcript of January 8, 2019 Sentencing Hearing ("January 8, 2019 Sentencing Tr."), 2-3. Defendant objected to the motion and the Court sustained the objection. Id. Moreover, the Court ruled that for purposes of sentencing, it would not consider anything that happened to Defendant in Saudi Arabia. Id. at 6. Later in the proceeding, Mr. Leonard attempted to bring up Defendant's detention in Saudi Arabia, and the Court quickly reminded him of its earlier ruling that it would not consider anything that happened to Defendant in Saudi Arabia. Id. at 117. The Court instructed Mr. Leonard to stop talking on the point. Id. at 118. However, Mr. Leonard persisted in raising the issue of Saudi Arabia until the Court again instructed him to "[s]top talking about that point and move on to another point." Id. At this juncture, Mr. Leonard called for a five-minute recess, which the Court granted. Id. at 119. When the hearing resumed several minutes later, Mr. Leonard immediately stated "at this time I would make a motion for recusal based upon the following six reasons," to which the Court responded "[p]ut it in writing and give it to me tomorrow morning. We'll adjourn for the day." Id.

Thereafter, Defendant filed his written motion for recusal. As discussed in greater detail *infra*, in its January 29, 2019 Opinion and Order, the Court held that Defendant failed to show that recusal was warranted under either 28 U.S.C. §§ 144 or 455(a), (b)(1).

Defendant's sentencing hearing was held on February 1, 2019, at which the Court sentenced Defendant to a prison term of 87 months,[1] followed by two years of supervised release. The Court set Defendant's surrender date for April 30, 2019. Defendant appealed the Court's final judgment on February 6, 2019.

---

[1] The guideline imprisonment range was 121-151 months. See Dkt. 337.

Defendant now seeks to remain released during the pendency of his appeal, United States v. Warren N. Barr, III, No. 19-1238. Defendant argues that: he does not pose a flight risk or a danger to the community; (2) his appeal was not filed for purposes of delay; and (3) his appeal will raise a substantial question of law or fact that will likely result in remand, and either an opportunity to go to trial or a lower sentence. Defendant states that he intends to argue on appeal that the Court erred by: (1) failing to permit him to present evidence in mitigation at his sentencing hearing regarding his detention in Saudi Arabia; (2) denying his motion for recusal; (3) denying his motion to withdraw his guilty plea; and (4) denying his motion to dismiss the indictment. The Court will address each issue in turn.

## II. DISCUSSION

### A. Standard

A person may be released pending appeal if the court finds: (1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the community if released; (2) that the appeal was not filed for the purposes of delay; and (3) that the appeal raises a substantial question of law or fact likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process. See 18 U.S.C. § 3143(b)(1)(A), (B). "Under this test, an appeal raises substantial issues if it presents a close question or one that very well could be decided the other way." United States v. Thompson, 787 F.2d 1084, 1085 (7th Cir. 1986) (internal quotation marks omitted).

### B. Defendant Fails to Show that He Should Be Released Pending Appeal

Here, there is no indication that Defendant would likely flee or pose a danger to the community if released; nor does it appear that Defendant has filed his appeal purely for the

purposes of delay. However, for the following reasons, the Court finds that Defendant has not raised a substantial question of law or fact likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process.

## 1. The Court Did Not Err by Denying Defendant an Opportunity to Present Evidence in Mitigation at His Sentencing Hearing Regarding His Detention in Saudi Arabia

Defendant contends that the Court erred by denying him the opportunity to present evidence in mitigation at his sentencing hearing regarding his six-month period of incarceration in Saudi Arabia. On this point, the Court notes that while it is required to address a defendant's "principal arguments" at sentencing, it need not address arguments that are "so weak as to not merit discussion." United States v. Villegas-Miranda, 579 F.3d 798, 801 (7th Cir. 2009) (quoting United States v. Cunningham, 429 F.3d 673, 679 (7th Cir. 2005)); see also United States v. Estrada-Mederos, 784 F.3d 1086, 1091 (7th Cir. 2015) ("A district court need not spend time addressing an argument 'if anyone acquainted with the facts would have known without being told why the judge had not accepted the argument.'") (quoting Cunningham, 429 F.3d at 679).

On March 21, 2017, Defendant filed a Brady motion seeking documents related to his arrest and six-month detention in Saudi Arabia. In his Brady motion, Defendant asserted that after his indictment in this case, the United States triggered his arrest by the local authorities in Saudi Arabia and therefore he was entitled to credit for his six-month incarceration in Saudi Arabia against any potential sentence he may receive in this case. The Court granted Defendant's Brady motion, and the Government produced various documents related to Defendant's arrest and detention in Saudi Arabia. The Government also arranged for Defendant and his prior counsel, Mr. Boyle, to review classified materials related to the matter. On November 27, 2018—prior to Defendant's present attorney, Mr. Leonard, filing his notice of appearance—the Government produced additional

6

materials which concerned, *inter alia*, its attempts to bring Defendant back to the United States from Saudi Arabia.

Notwithstanding the Government's turnover of the aforementioned documents, less than a week before his January 8, 2019 sentencing hearing, Defendant filed a motion to dismiss the indictment based on the Government's purported failure to turn over documents relevant to Defendant's arrest and detention in Saudi Arabia, and the Government's "extraordinarily late" production of such documents on November 27, 2018. Dkt. 298 at 3. Defendant also argued that the discovery that the Government had already turned over "prove[s] that, despite the Government's position to the contrary, the United States, including those associated or formerly associated with this case, was intimately involved with Mr. Barr's arrest and detention in Saudi Arabia." Id. Defendant's motion included 30 pages of e-mails turned over by the Government, in which numerous employees of the United States discuss their efforts to secure Defendant's return from Saudi Arabia to the United States. See id., Ex. 1. The Government also submitted 97 pages of relevant e-mails, attached to its response to Defendant's motion to dismiss the indictment. See Dkt. 305, Ex. 2.

The e-mails show that while the United States was attempting to coordinate Defendant's return, he was arrested by Saudi Arabian authorities for matters unrelated to his indictment in this case and held in debtors' prison for six-months for debts he owed to various persons in Saudi Arabian. Moreover, the e-mails show that after Defendant was arrested in Saudi Arabia, the United States had to engage in significant efforts to secure his release and return to the United States. Thus, the e-mails did *not* support Defendant's assertion that there was a conspiracy against him, where the United States had directed Saudi Arabian authorities to hold Defendant for six-months in purportedly "squalid" jail conditions.

Based on its review of the aforementioned documents, the Court denied Defendant's motion to dismiss, holding, *inter alia*, that Defendant failed to demonstrate that the Government had withheld evidence material to his sentencing. January 7, 2019 Order, Dkt. 313 at 4. The Court explained that "Defendant has the discovery necessary for his sentencing, a sentencing that pertains to Defendant's illegal conduct perpetrated in the Northern District of Illinois—not Saudi Arabia." Id.

In his sentencing memorandum, Defendant raised the issue of his arrest and detention in Saudi Arabia as a mitigating factor under 18 U.S.C. § 3553. In his 18-page sentencing memorandum, Defendant dedicated only two complete paragraphs to the issue, arguing that "as a direct result of this case, Mr. Barr was jailed in Saudi Arabia" for a period of six-months, during which "he was forced to endure squalid conditions." Dkt. 310 at 15. Defendant further argued that his incarceration in Saudi Arabia caused him and continues to cause him "tremendous emotional distress" and there therefore "any additional period of incarceration would be 'greater than necessary' to achieve any legitimate aims of sentencing." Id. at 16. The Government's sentencing memorandum, filed before Defendant's, made no mention of Defendant's arrest and detention in Saudi Arabia as a mitigating factor. Moreover, while the Probation Office discussed Defendant's detainment in Saudi Arabia in its presentence investigation report, it was not included as a mitigating factor. Dkt. 174 at 14. Rather, it was discussed under the heading of "Other Criminal Conduct," although the Probation Office did not suggest that Defendant's legal trouble in Saudi Arabia should be considered as relevant conduct. Id.

Defendant's January 8, 2019 sentencing hearing began with the Government's oral motion to tender three classified documents for the Court to review *ex parte*, concerning Defendant's "stay in Saudi Arabia and then him coming back to the United States." Dkt. 321, January 8, 2019

8

Sentencing Tr. at 2-3. The AUSA who made the motion stated that the classified documents had been tendered to Defendant's prior Counsel, Mr. Boyle, as well as Defendant himself; but they had not been tendered to Mr. Leonard because he did not have the proper security clearance to review the classified documents. Id. at 3. The AUSA also stated that "I am of the position, your Honor, that these documents are not material to the sentencing. So I would like to tender them to the Court to review on an *ex parte* basis, and you can say whether you would consider them, whether you find them material to the sentencing." Id. Thereafter, Mr. Leonard objected to the Court's *ex parte* review of the classified documents, on the basis that he had not been able to review the documents. Id. at 3-6. The Court sustained Mr. Leonard's objection and ruled that it would not consider anything that happened to Defendant in Saudi Arabia. Id. at 6. Despite the Court's ruling, Mr. Leonard attempted to raise the Saudi Arabia issue while discussing § 3553 factors, at which point the Court repeatedly instructed Mr. Leonard to stop talking on the point. Id. at 118.

Now, Defendant argues that the Court "erred by failing to permit him to present evidence in mitigation that was clearly relevant…regarding his incarceration in Saudi Arabia." Dkt. 350, Defendant's Motion for Release ("Def.'s Mot. for Release") ¶ 14. Defendant, however, does not explain why his incarceration in Saudi Arabia was "clearly relevant" to his sentencing. Rather, he states that "he stands on those arguments previously presented on that issue." Id. ¶ 19.

Here, Defendant had nearly two years to develop an argument regarding his arrest and detention in Saudi Arabia, aided by the Court's March 24, 2017 Order granting his Brady motion. The Court also thoroughly addressed the issue in its January 7, 2019 Order, Dkt. 313, denying Defendant's motion to dismiss the indictment. Simply put, at the time of Defendant's sentencing, there was no factual basis to support his argument that his arrest and detention in Saudi Arabia

9

was a mitigating factor under § 3553. See Estrada-Mederos, 784 F.3d at 1091 ("A district court need not spend time addressing an argument 'if anyone acquainted with the facts would have known without being told why the judge had not accepted the argument.'") (quoting Cunningham, 429 F.3d at 679). Instead, the record showed that Defendant was arrested and detained by Saudi Arabian authorities for matters unrelated to this case and held in debtors' prison until the United States was able to secure his release. Thus, Defendant's mitigation argument regarding his arrest and detention in Saudi Arabia was "so weak as to not merit discussion." Villegas-Miranda, 579 F.3d at 801.

Moreover, to the extent that Defendant asserts that he should receive credit for the time he spent incarcerated in Saudi Arabia, this determination lies exclusively with the Bureau of Prisons, rather than the district court at sentencing. See United States v. Walker, 917 F.3d 989, 993 (7th Cir. 2019) (holding that the Bureau of Prisons, rather than district court, has authority to determine whether a defendant ought to receive sentencing credit for time he served awaiting trial under 18 U.S.C.A. § 3585(b)).

Finally, even if Defendant's sentencing were to be remanded, he would not likely receive a sentence that does not include a term of imprisonment or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process. See 18 U.S.C. § 3143(b)(1)(A), (B). Defendant cites United States v. Mohsin, 904 F.3d 580 (7th Cir. 2018) for the proposition that a districts court's refusal to hear relevant mitigating evidence at sentencing may result in a substantially reduced sentence on remand. The Court does not doubt that such a result may occur in some cases, but Defendant strikes out in drawing any substantive similarities between this case and Mohsin. Most importantly, Mohsin involved the application of a specific sentencing enhancement which had a significant impact on the defendants' resulting guideline

10

imprisonment ranges. Id. at 582. In Mohsin, the Seventh Circuit held that the district court erred in applying the sentencing enhancement at issue, based on the court's failure to consider certain evidence at the sentencing hearing. Id. at 586. Thus, on remand the defendants were sentenced to time served. See USA v. Mohsin, et al., Case No. 15-cr-00217, Dkt. 269, 271.

In this case, there is no specific sentencing enhancement at issue, such that Defendant would likely receive a significantly lower sentence on remand if the enhancement was not applied. Rather, there is only Defendant's vague and incredible assertion that under § 3553 he should be given *no additional period of incarceration* because he was incarcerated by a foreign government for matters unrelated to this case. Given Defendant's guideline imprisonment range of 121-151 months, and his actual sentence of 87 months, it is not likely that he would receive a sentence that does not include a term of imprisonment or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process, even if his sentencing were remanded with instructions to consider his argument regarding his arrest and detention in Saudi Arabia. See 18 U.S.C. § 3143(b)(1)(A), (B).

For the reasons stated above, Defendant's argument that the Court erred by failing to permit him to present evidence in mitigation regarding his detention in Saudi Arabia does not provide a valid basis for his release pending appeal.

**2. The Court Did Not Err by Denying Defendant's Motion for Recusal**

Next, Defendant asserts that on appeal he will be challenging the Court's January 29, 2019 Opinion and Order denying his motion for recusal. Defendant's motion provides no argument regarding how the Court erred in denying his motion for recusal. Rather, he states that "the Court refused to recuse itself despite the issues raised by [Defendant] is his extensive briefing on that issue" and that he "stands on those arguments previously presented on that issue." Def.'s Mot. for

Release ¶¶ 20-21. For the following reasons, the Court concludes that it did not err by denying Defendant's motion for recusal, and therefore Defendant has failed to raise a substantial issue that would justify his release pending appeal.

Defendant's motion for recusal relied heavily on Mr. Leonard's involvement in arguing United States v. Ruby Mohsin, Case No. 18-1275, before the Seventh Circuit. In Mohsin, the Seventh Circuit reviewed this Court's sentencing of Mrs. Mohsin and her co-defendant, Mohammad Khan. On September 25, 2018, the Seventh Circuit issued a written opinion, vacating the sentences imposed by this Court and remanding the case for resentencing pursuant to Circuit Rule 36; thus, the case was remanded to a different district court judge for resentencing. See United States v. Mohsin, 904 F.3d 580, 586 (7th Cir. 2018).

Although Mr. Leonard was not involved in the sentencing hearing for Mrs. Mohsin before the Court, Defendant argued in his motion for recusal that the Court was aware of his involvement in the Mohsin appeal because the Seventh Circuit's decision was posted on the district court's docket. The motion also stated that certain quotes from Mr. Leonard regarding the case appeared in the press. Despite these allegations, the Court makes clear that it was not aware of Mr. Leonard's participation in the appeal of Mohsin prior to Defendant raising the issue in his motion for recusal.

In his motion for recusal, Defendant argued that Mr. Leonard's involvement in the appeal of Mohsin, along with the Court's conduct toward Mr. Leonard at the both the November 30, 2018 and January 8, 2019 hearings—which he characterized as "openly hostile"—created the "unmistakable appearance of bias or prejudice toward Mr. Leonard and Defendant," and therefore warranted recusal under 28 U.S.C. § 455(a). Def.'s Mot. to Recuse and Disqualify ¶¶ 8, 10, 20. Defendant further argued that pursuant to 28 U.S.C. §§ 144 and 455(b)(1), the Court should disqualify itself because it has an *actual* bias or prejudice against Defendant, based on the Court's

conduct and Mr. Leonard's role in the Mohsin appeal. Dkt. 316, Def.'s Mot. to Recuse and Disqualify ¶ 21.

On January 29, 2019, the Court issued a 20-page Opinion and Order addressing the motion for recusal, holding that Defendant had failed to show that recusal was warranted under §§ 144 or 455(a), (b)(1). See Dkt. 334. Given Defendant's current position that he "stands on those arguments previously presented" regarding recusal, the Court will provide a brief summary of its January 29, 2019 Opinion and Order.

Section 455(a) "requires a federal judge to 'disqualify himself in any proceeding in which his impartiality might reasonably be questioned.'" Liteky v. United States, 510 U.S. 540, 541 (1994) (quoting 28 U.S.C. § 455(a)). "In evaluating whether a judge's impartiality might reasonably be questioned, [the] inquiry is 'from the perspective of a *reasonable* observer who is *informed of all the surrounding facts and circumstances.*'" In re Sherwin-Williams Co., 607 F.3d 474, 477 (7th Cir. 2010) (emphasis in original) (quoting Cheney v. United States Dist. Court, 541 U.S. 913, 924 (2004)). A reasonable observer in this context is a "well-informed, thoughtful observer rather than...a hypersensitive or unduly suspicious person." Hook v. McDade, 89 F.3d 350, 354 (7th Cir. 1996).

Section 455(b)(1), on the other hand, requires a federal judge to disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C.A. § 455(b)(1). "As the Supreme Court has explained, neither judicial rulings nor opinions formed by the judge as a result of current or prior proceedings constitute a basis for recusal 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" United States v. White, 582 F.3d 787, 807 (7th Cir. 2009) (quoting Liteky, 510 U.S. at 555). "Judges have discretion in running their

13

cases, and '[a] judge's ordinary efforts at courtroom administration…remain immune' from charges of partiality, even if the judge exhibits 'impatience, dissatisfaction, annoyance, and even anger.'" In re City of Milwaukee, 788 F.3d 717, 723 (7th Cir. 2015) (quoting Liteky, 510 U.S. at 555–56).

The Court denied Defendant's motion for recusal for six reasons. First, while Defendant submitted an affidavit in support of the motion, Mr. Leonard did not file a certificate stating that the affidavit was made in good faith in compliance with § 144. Mr. Leonard's failure to file the required certificate was sufficient alone to deny Defendant's motion, to the extent that it moved for recusal under § 144. See Balistrieri, 779 F.2d at 1199 (stating that the requirements of § 144 are "strictly construed."); see also United States v. Betts-Gaston, 860 F.3d 525, 537 (7th Cir. 2017), cert. denied, 138 S. Ct. 689 (2018) (affirming the district court judge's denial of defendant's motion to recuse under § 144 because, *inter alia*, the defendant's counsel did not file a certificate stating the affidavit was made in good faith).

Second, the Court held that Defendant's § 144 affidavit was untimely because it was not "filed 'at the earliest moment after [the movant acquires] knowledge of the facts demonstrating the basis for such disqualification.'" United States v. Sykes, 7 F.3d 1331, 1339 (7th Cir. 1993) (quoting United States v. Barnes, 909 F.2d 1059, 1071 (7th Cir.1990)). Rather, Defendant filed his recusal motion over a month after the November 30, 2018 hearing, which Defendant claimed was the first instance of the Court's purportedly hostile conduct toward Mr. Leonard. Moreover, Defendant first raised the issue of recusal *during the January 8, 2019 sentencing hearing*, shortly before allocution. See Ex parte Am. Steel Barrel Co., 230 U.S. 35, 44 (1913) (stating that a motion for recusal should not be used "to paralyze the action of a judge who has heard the case, or a question in it, by the interposition of a motion to disqualify him between a hearing and a

14

determination of the matter heard.").

Third, while Defendant sought to portray the Court's conduct towards Mr. Leonard as "hostile," the conduct referenced in his motion was nothing more than the Court's ordinary efforts to administer Defendant's sentencing hearing, which do not do not support recusal under either §§ 144 or 455. See Liteky, 510 U.S. at 555–56.

Fourth, Defendant's motion focused on the Court's alleged bias toward Mr. Leonard, but failed to explain how the alleged bias extended to Defendant himself. Under both §§ 144 and 455(b)(1), recusal is warranted when a judge has a personal bias or prejudice against a *party*; neither statute addresses a judge's bias toward counsel alone. The Seventh Circuit has stated that a judge's "antipathy to an attorney is insufficient grounds for disqualification," unless the party seeking recusal alleges facts "suggesting that the alleged bias against counsel might extend to the party." Sykes, 7 F.3d at 1339.

Fifth, the Court addressed Defendant's argument for recusal under § 455(a), which "requires a federal judge to 'disqualify himself in any proceeding in which his impartiality might reasonably be questioned.'" Liteky, 510 U.S. at 541 (quoting 28 U.S.C. § 455(a)). In applying this objective standard, the Court rejected that a reasonable observer who was informed of all the surrounding facts and circumstances would have questioned the Court's impartiality in this case. See In re Sherwin-Williams Co., 607 F.3d at 477. The Court further reasoned that only the most suspicious of individuals would conclude that a district court judge would maintain bias against a criminal defendant, based solely upon on his counsel's participation in an appeal wherein the judge's sentencing decision in an unrelated matter was reversed and remanded to a different judge.

Finally, the Court rejected Defendant's reliance on In re Nat'l Union Fire Ins. Co., 839 F.2d 1226 (7th Cir. 1988), for the proposition that his motion for recusal should be summarily

granted because the Court allowed the Government an opportunity to respond. See United States v. Salahuddin, 608 F. Supp. 2d 1061, 1069 (E.D. Wis. 2009) ("[Nat'l Union Fire] does not hold that judges must never ask for counsel's views, nor does it state that a judge must always recuse if he does."); United States ex rel. Britz v. Thieret, 737 F. Supp. 59, 60 (C.D. Ill. 1990) ("[W]e thought it advisable to seek the parties' views and authorities on the matter [of recusal], even though we are well aware that the final analysis and decision on recusal falls on these shoulders alone."); Cent. Tel. Co. of Virginia v. Sprint Commc'ns Co. of Virginia, No. 3:09CV720, 2011 WL 6178652, at *5 (E.D. Va. Dec. 12, 2011), aff'd, 715 F.3d 501 (4th Cir. 2013) ("Where, as here, the parties have invested such extensive time and resources into a case, one judgment on the merits has been entered, and another claim has been tried on its merits, it would be unfair, and a likely denial of due process, to refuse a party's request to brief issues, the resolution of which has such serious consequences. The instruction of the Judicial Conference cannot reasonably be interpreted to mean that a court should deny briefing on a recusal issue if a party requests it."). Nevertheless, out of abundance of caution, the Court struck the Government's response and completely disregarded it in formulating its decision.

In the instant motion, Defendant does not challenge any specific portion of the Court's January 29, 2019 Opinion and Order; rather, he rests on the very arguments that the Court considered in denying his motion for recusal. However, as discussed above, there were no "close questions" involved in the Court's denial of Defendant's motion for recusal. Accordingly, Defendant has failed to show that his appeal raises a substantial question of law or fact regarding the Court's denial of his motion for recusal which would likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process. See 18 U.S.C.

§ 3143(b)(1)(A), (B).

**3. The Court Did Not Err by Denying Defendant's Motion to Withdraw His Guilty Plea**

Next, Defendant asserts that on appeal he will be challenging the Court's January 7, 2019 Order denying his motion to withdraw his guilty plea. Again, Defendant's motion provides no substantive argument as to how the Court erred in denying his motion to withdraw his guilty plea, and instead he merely "stands on those arguments previously presented." Def.'s Mot. for Release ¶ 23.

In his motion to withdraw his guilty plea, Defendant argued that he should be allowed to withdraw his plea based on ineffective assistance of counsel. Defendant asserted that his previous attorney, Mr. Boyle, did not inform him prior to pleading guilty that the Government must prove the loss amount at sentencing by a preponderance of the evidence, as opposed to beyond a reasonable doubt. Defendant submitted an affidavit in which he contended that had he known that that the Government need only prove the loss amount by a preponderance of the evidence at sentencing, rather than beyond a reasonable doubt, he would not have pleaded guilty. Dkt. 300, Ex. A, Affidavit of Warren N. Barr ("Barr Aff.") ¶¶ 4-9. Defendant did *not* contend, however, that Mr. Boyle misinformed him as to the correct burden of proof at sentencing, or that he asked Mr. Boyle what the correct burden of proof would be at sentencing but never received an answer. Rather, Defendant stated that he "always held the belief that the Government would have to prove the loss amount beyond a reasonable doubt" and that he "was never advised by [Mr. Boyle] that the Government had to prove the loss amount by a preponderance of the evidence." Barr Aff. ¶¶ 4-5.

In applying the two-part test for ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Court concluded that Defendant had failed to show that: (1)

17

Boyle's performance was objectively unreasonable; or (2) that Defendant would not have pleaded guilty if he had known the correct standard of proof at sentencing.

As to the first prong of Strickland, the Court noted that Defendant was unable to cite a single case where a court has found that an attorney's failure to inform a defendant that the preponderance of evidence standard applies at sentencing amounts to ineffective assistance of counsel; and neither the Government nor the Court were able to find such a case. Further, the Court regarded Defendant's argument on this point to be conclusory and undeveloped, as he merely asserted that Mr. Boyle's failure to anticipate and correct his own misapprehension regarding the burden of proof at sentencing "clearly falls below the objective standard of reasonableness expected of defense counsel under Strickland." Dkt. 300 at 3; see United States v. Hook, 471 F.3d 766, 775 (7th Cir. 2006) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues.)" (citation omitted)). In considering the first prong of Strickland, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 669. Defendant's motion was devoid of any substantive argument to overcome this presumption.

As to the second prong of Strickland, the Court concluded that Defendant had failed to submit any contemporaneous evidence in support of his assertion that he would he would not have pleaded guilty had he known that the Government need only prove the loss amount at sentencing by a preponderance of the evidence. See Lee v. United States, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," and "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."). The Court noted

18

Defendant was not arguing that Mr. Boyle had misinformed him as to the applicable standard of proof at sentencing; rather, Defendant was contending that it was his own misapprehension on which he relied when entering his guilty plea. However, at the June 17, 2016 Change of Plea Hearing, the Court presented Defendant with the opportunity to ask any questions he might have regarding his plea, and Defendant declined to do so. Thus, the Court determined that the only evidence presented by Defendant, in the form of his own affidavit, was nothing more than a *post hoc* assertion. Lee, 137 S. Ct. at 1967.

Finally, the Court addressed whether Defendant had demonstrated a fair and just reason to withdraw his plea, aside from his argument regarding ineffective assistance of counsel. See United States v. Lundy, 484 F.3d 480, 484 (7th Cir. 2007) ("A guilty plea, once accepted by the court, may be withdrawn only for a 'fair and just reason,' and the burden of justifying relief rests with the defendant.") (quoting Fed. R. Crim. P. 11(d)(2)(B)). In determining whether Defendant had provided a "fair and just" reason for withdrawing his guilty plea, the Court considered: (1) the timeliness of the defendant's attempted plea withdrawal; and (2) whether the defendant has asserted or maintained his innocence. United Sates v. Krasinski, No. 03 CR 0251, 2005 WL 8160439, at *2 (N.D. Ill. Jan. 24, 2005).

As to the first element, the Court held that Defendant's attempted plea withdraw was not timely because he filed his motion to withdraw his guilty plea less than a week before his scheduled sentencing hearing, which had already been rescheduled over a dozen times. As to the second element, the Court found that Defendant had not maintained his innocence because he was not challenging the Government's recitation of facts establishing his guilt, which Defendant had previously agreed with in his written plea agreement and at his change of plea hearing. Accordingly, the Court concluded that Defendant had not demonstrated a fair and just reason to

withdraw his guilty plea.

Here, Defendant's position that he stands on his original arguments does nothing to convince the Court that there were any "close questions" regarding its denial of his motion to withdraw his guilty plea. As discussed above, after careful consideration, the Court concluded that there was absolutely no basis for Defendant to withdraw his guilty plea. Accordingly, Defendant has failed to show that his appeal raises a substantial question of law or fact regarding the Court's denial of his motion to withdraw his guilty plea which would likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process. See 18 U.S.C. § 3143(b)(1)(A), (B).

## 4. The Court Did Not Err by Denying Defendant's Motion to Dismiss the Indictment

Finally, Defendant asserts that he will argue on appeal that the Court erred in refusing to dismiss the indictment and/or order further Brady compliance, after the Government belatedly turned over e-mails and documents related to his arrest and detention in Saudi Arabia. Yet again, Defendant offers no argument in support aside from "those arguments previously presented." Def.'s Mot. for Release ¶ 25.

As discussed above in detail, Defendant adamantly pursued discovery from the Government related to his arrest and detention in Saudi Arabia, based on the assertion that this discovery was somehow material to his sentencing. On March 24, 2017, the Court granted Defendant's Brady motion seeking documents from the Government related to his arrest and detention by Saudi Arabian authorities. Thereafter, the Government produced various related reports, including classified documents. On November 27, 2018, the Government produced additional materials which concerned, *inter alia*, its attempts to bring Defendant back to the United

States from Saudi Arabia.

In his motion to dismiss his indictment, Defendant argued that the period of time that elapsed between the Court's March 24, 2017 Order granting his Brady motion and the Government's production of additional discovery on November 27, 2018 was a Brady violation which required dismissal of the indictment.

In its January 7, 2019 Order, the Court denied Defendant's motion to dismiss the indictment for two reasons. First, the Court concluded that Defendant had ample time to make use of the additional discovery produced by the Government on November 27, 2018. See Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001), cert. denied, 535 U.S. 1078 (2002) ("[E]vidence for Brady purposes is deemed 'suppressed' if the prosecution failed to disclose the evidence before it was too late for the defendant to make use of the evidence."). More importantly, however, the Court held that Defendant failed to show that the Government was withholding further discovery that was *material* to his sentencing. In other words, "Defendant ha[d] the discovery necessary for his sentencing, a sentencing that pertains to Defendant's illegal conduct perpetrated in the Northern District of Illinois—not Saudi Arabia." Dkt. 313 at 4.

Once again, there is no "close question" at issue here. Rather, the Court properly rejected Defendant's argument that his indictment should be dismissed because the Government belatedly turned over immaterial discovery related to his arrest and detention by a foreign government for matters unrelated to this case. Accordingly, Defendant has failed to show that his appeal raises a substantial question of law or fact regarding the Court's denial of his motion to dismiss his indictment which would likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process. See 18 U.S.C. § 3143(b)(1)(A), (B).

## III. CONCLUSION

For the reasons stated above, Defendant has failed to show that his appeal raises a substantial question of law or fact likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process. Moreover, the Court cannot consider Defendant's dissatisfaction with a sentence below the guideline imprisonment range as a proper basis for release pending appeal. Accordingly, Defendant's motion for release pending appeal is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: April 12, 2019

2019 APR 15 AM 11:08